In re Anthony Norman LANDRY and Teresa Marie Landry, Debtors.

Anthony Norman Landry and Teresa Marie Landry, Plaintiffs,

v.

Bank of America, N.A. and U.S. Bank, N.A., Defendants.

Bankruptcy No. 11–31221–E–13.
Adversary No. 12–2675.
Docket Control No. DBR–1.

United States Bankruptcy Court, E.D. California.

May 15, 2013.

542

Richard A. Hall, Auburn, CA, for Plaintiff.

Daniel B. Ruby, San Francisco, CA, for Defendant.

## MEMORANDUM OPINION AND DECISION

RONALD H. SARGIS, Bankruptcy Judge.

Defendants Bank of America, N.A. ("BANA") and U.S. Bank, N.A., as Trustee for Certificate holders of LXS 2007–16N Trust Fund ("U.S. Bank") (collectively "Defendants") seek to dismiss the Third Cause of Action (violation of the automatic stay) and Fourth Cause of Action (violation of California Rosenthal Fair Debt Collection Practices Act) in this Adversary Proceeding. It is asserted that the Complaint does not state claims upon which relief can be granted. Fed.R.Civ.P. 12(b)(6) and Fed. R. Bankr.P. 7012.

## BACKGROUND OF BANKRUPTCY CASE

Plaintiffs Anthony Landry and Teresa Landry ("Plaintiffs") filed their Chapter 13 petition on May 4, 2011. The court confirmed the Plaintiffs' Amended Chapter 13 Plan on October 4, 2011.[1] The Amended Chapter 13 Plan provides for the payment of the Class 1 Secured Claim of BAC Home Loan Servicing ("Class 1 Claim").[2] The Class 1 Claim is identified as secured by the real property commonly known as 7730 Meadowlark Lane, Sheridan, California. The post-petition monthly mortgage payments of $2,200.75 (or as adjusted pursuant to the underlying contract for the debt) for this claim are provided to be paid in the confirmed Amended Chapter 13 Plan.

On November 23, 2012, Plaintiffs filed this Adversary Proceeding against Defendants. The Complaint alleges that on July 10, 2012, Defendants filed a Notice of Mortgage Payment Change[3] making demand on the Chapter 13 Trustee to increase the post-petition monthly mortgage payments on the Class 1 Claim to $3,399.22 a month (principal and interest in the amount of $2,987.44, plus impounds of

---

1. First Amended Plan, Bankr. E.D. Cal. No. 11–31221 ("Plaintiff's Bankruptcy Case"), Dckt. 15.

2. BANA is the successor of BAC Home Loans Servicing, LP by merger. Certificate of Merger from the Office of the Secretary of State, State of Texas, dated June 28, 2011, effective July 1, 2011, Document No. 374034630002, provided to the court by Bank of America, N.A. in connection with other unrelated proceedings. Proof of Claim Number 1 filed in Plaintiffs' Bankruptcy Case states that U.S. Bank, N.A., Trustee is the creditor and that payments are to be sent to BAC Home Loans Servicing, LP for this for the Class 1 Claim as provided in the Plaintiff's Chapter 13 Plan.

3. Bankr. E.D. Cal. No. 11–31221, July 10, 2012 Docket Entry (no docket number).

$411.72). The demand for the increased payment was effective August 1, 2012.

Two of the six causes of action stated by Plaintiffs in the Complaint are at issue in this Motion. The Third Cause of Action asserts that the filing and service on the Chapter 13 Trustee of the Notice of Mortgage Payment Change seeking payment of the higher amount constituted a violation of the Automatic Stay. The Fourth Cause of Action asserts that the filing and service of the Notice of Mortgage Payment Change constitute a violation of the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 *et seq.* ("Rosenthal Act").

## MOTION TO DISMISS

A motion to dismiss must state with particularity the grounds upon which the requested relief is based (Fed.R.Civ.P. 7(b), Fed. R Bankr.P. 7007). For the Third Cause of Action (violation of the automatic stay), the grounds stated are that the Complaint fails to allege facts which demonstrate a violation of the automatic stay because a Notice of Payment Change, as permitted under the Chapter 13 Plan and Federal Rules of Bankruptcy Procedure, provided by Defendants does not constitute a violation of the Automatic Stay. Further, the Complaint fails to allege any conduct of the Defendants which is asserted to have threatened, harassed, or coerced Plaintiffs.

To the extent that the Third Cause of Action asserts a claim couched as abuse of process, Defendants state that the Complaint fails to allege any use of the court's process in an improper way by the Defendants. Additionally, the Complaint fails to allege any improper actions by Defendants in attempting to enforce its lien as part of a claim for abuse of process.

For the Fourth Cause of Action, it is asserted that Defendants are not "debt collectors" as defined by the Rosenthal Act. Further, it asserts that any allegations that Defendants are debt collectors under the Rosenthal Act are conclusory. Finally, that the Complaint fails to allege that Defendants are debt collectors under the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA").

Plaintiffs oppose the Motion, asserting that the Complaint sufficiently states plausible claims against the Defendants and that the pleadings conform to the liberal pleading requirements. Plaintiffs assert that Defendants have continued to collect monies from the Estate (payments from the Chapter 13 Trustee) in excess of the amount which they are entitled for the post-petition mortgage payment in violation of the automatic stay.

Plaintiffs also contend that they have sufficiently pled that Defendants are debt collectors under the Rosenthal Act, citing the court to paragraphs 72–78 of the Complaint. Plaintiffs direct the court to consider the ruling in *McGrew v. Countrywide Home Loans, Inc.,*[4] in response to the two decisions on the issue presented by Defendants in the Memorandum of Points and Authorities filed with the Motion to Dismiss.

### Standard of Review for a Rule 12(b) Motion to Dismiss

In considering a motion to dismiss, the court starts with the basic premise that the law favors disputes being decided on their merits. A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to the relief.[5] "[A] plaintiff's

---

4. 2009 WL 1803455 (S.D.Cal.2009).

5. *Williams v. Gorton,* 529 F.2d 668, 672 (9th Cir.1976).

obligation to provide 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[6] Any doubt with respect to whether a motion to dismiss is to be granted should be resolved in favor of the pleader.[7] For purposes of determining the propriety of a dismissal before trial, allegations in the complaint are taken as true.[8]

Federal Rule of Civil Procedure 8 and Federal Rule of Bankruptcy Procedure 7008 require that complaints contain a short, plain statement of the claim showing entitlement to relief and a demand for the relief requested.[9] Factual allegations must be enough to raise a right to relief above the speculative level.[10] All allegations of fact by the party opposing the motion are accepted as true and are construed in the light most favorable to that party.[11] As the Supreme Court recently interpreted and applied Federal Rule of Civil Procedure 12(b)(6), a plaintiff cannot "plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."[12]

In ruling on a 12(b)(6) motion to dismiss, the Court may consider "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."[13] The court need not accept unreasonable inferences or conclusory deductions of fact cast in the form of factual allegations.[14] Nor is the court required to "accept legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged."[15]

## THE THIRD CAUSE OF ACTION FAILS TO STATE A CLAIM FOR VIOLATION OF THE AUTOMATIC STAY OR ABUSE OF PROCESS

■ As the Amended Complaint fails to set forth sufficient matters to establish plausible grounds for a claim based on an alleged violation of the Automatic Stay, the Motion is granted as to the Third Cause of Action. Even if all of the allegations set forth against Defendants in the Complaint are accepted as true, the third cause of action fails as a matter of law.

Federal Rule of Bankruptcy Procedure 3002.1, added by the 2011 Amendments and effective December 1, 2011, provides a procedure for notice to be provided by a creditor for mortgage payment changes during a Chapter 13 case. This rule applies in Chapter 13 cases to claims that are secured by a security interest in the debtor's principal residence and are provided

---

**6.** *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

**7.** *Pond v. General Electric Co.,* 256 F.2d 824, 826–27 (9th Cir.1958).

**8.** *Kossick v. United Fruit Co.,* 365 U.S. 731, 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961).

**9.** Fed.R.Civ.P. 8(a).

**10.** *Id.,* citing to 5 C. Wright & A. Miller, Fed. Practice and Procedure § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

**11.** *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 810 (9th Cir.1988).

**12.** *Ashcroft v. Iqbal,* 556 U.S. 662, 687, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**13.** *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir.2007).

**14.** *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001).

**15.** *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754–55 (9th Cir.1994).

for under section 1322(b)(5) of the Code in the debtor's plan.[16] As a noted bankruptcy treatise posits, compliance with the notice provision of the rule should eliminate any concern on the part of the holder of the claim that informing a debtor of a chance in post-petition payment obligations might violate the automatic stay.[17]

In the Plaintiffs' bankruptcy case, Defendants assert a claim secured by a first deed of trust on real property located at 7330 Meadowlark Lane, Sheridan, California. This is the Plaintiffs' principal residence. Defendants' claim is provided for in Class 1 of the Plaintiffs' Amended Chapter 13 Plan, which includes curing a pre-petition arrearage in the amount of $31,000.00.[18] Therefore, Defendants are qualified to avail themselves of Federal Rule of Bankruptcy Procedure 3002.1 and file and serve a Notice of Payment Change on Debtor, Debtor's counsel, and the Chapter 13 Trustee of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment.[19] The Notice filed by Defendants on July 10, 2012, states the monthly post-petition mortgage payment is $3,399.22 a month, effective August 1, 2012. It discloses that there is an increase in the escrow account from $0.01 to $411.79. No other change in the post-petition monthly mortgage payment is stated.[20] The attachment to the Notice identifies a monthly escrow amount increase of $227.00 for county taxes. An additional $147.00 is added for a projected shortage for the period of August 2012 through July 2013, for the amount necessary to provide for the escrow account not to have a negative balance. The escrow account begins with a negative ($4,593.94) as of August 2012. Page 10 of the Notice indicates that the Plaintiffs failed to make escrow payments for taxes in the months of June, July, August, September, October, November and December 2011, and January, February, March, April, and May 2012. The ending escrow balance is shown to be a negative ($4,593.18).

Plaintiffs assert that Defendants complying with the Bankruptcy Rules and giving notice of a mortgage payment change, thereby providing Plaintiffs with advance notice and an opportunity to object to Defendants' computation of the post-petition mortgage payment, violates the automatic stay. This is an unsustainable assertion. Compliance with the law in this context to give the Notice of Mortgage Payment Change is not simultaneously a violation of the law.

Further, as this court has explained in an unrelated case, "creditors and debtors are allowed to communicate their disparate positions and rights they seek to assert. It is only when coercion or harassment is coupled with the communication that they can be in violation of the automatic stay."[21] The Ninth Circuit Court of Appeals clearly addressed this situation in *Morgan Guaranty Trust Company of New York v. American Savings and Loan Association*,[22] holding that mere request for payment and informational

---

**16.** Fed. R. Bankr.P. 3002.1(a).

**17.** 9 COLLIER ON BANKRUPTCY ¶ App. 3002.1 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).

**18.** Bankr. E.D. Cal. No. 11–31221, Amended Chapter 13 Plan, Dckt. 15.

**19.** Fed. R. Bankr.P. 3002.1(b).

**20.** Bankr. E.D. Cal. No. 11–31221, Notice of Mortgage Payment Change, No Dckt. No. Provided, filed July 10, 2012.

**21.** *Singh v. U.S. Bank (In re Singh)*, 457 B.R. 790, 801 (Bankr.E.D.Cal.2011).

**22.** 804 F.2d 1487, 1491 (9th Cir.1986).

statement are permissible communications which do not violate the automatic stay.

■. Because the automatic stay seeks to ensure the orderly administration of a debtor's estate, provide a breathing spell for the debtor, maintain the status quo, and prevent harassment of a debtor and bankruptcy estate by the more sophisticated creditors, a request for payment (as with the presentment of a negotiable instrument) does not violate the automatic stay unless it is accompanied by coercion or harassment, such as immediately or potentially threatening the debtor's possession of property. Examples of communications cited by the Ninth Circuit as violating the automatic stay included: (1) notice of intent to terminate lease, (2) notice of intent to terminate franchise, (3) notice of medical clinic refusal to provide future medical services because of refusal to pay for prior services, (4) letter informing debtor that an attorney had been hired to collect a delinquent account, (5) college refusing to release transcripts as a method to force payment, and (6) a creditor who made repeated visits and telephone calls to a debtor.[23]

Examples of communications not violating the automatic stay included: (1) letter sent to debtor's attorney that a credit union would not have further business dealings with the debtor unless debt was reaffirmed, and (2) communications setting out the basis of the claim (informal proof of claim).[24]

In this Adversary Proceeding, Plaintiffs do not allege any coercion or harassment coupled with the Notice of Mortgage Pay-

ment Change filed by Defendants. Plaintiffs contend that the violation of the automatic stay was the act of filing the Notice of Mortgage Payment Change on or about July 10, 2012, in which Defendants seek "more than the amount due under the contract."[25]

Plaintiffs' contentions are further diminished by their own Amended Chapter 13 Plan confirmed by this Court on October 26, 2011. The Amended Chapter 13 Plan, Section 3.10(d), provides that the automatic stay (to the extent it would apply) is modified to allow the Defendants to send notices concerning changes of interest rate on variable interest rate loans.[26]

■. Furthermore, Plaintiffs fail to allege any factual or legal grounds in which the Defendants used the court's process as an improper way of attempting to enforce the lien. The California Supreme Court addressed what constitutes abuse of process in *Rusheen v. Cohen*,[27]

> The common law tort of abuse of process arises when one uses the court's process for a purpose other than that for which the process was designed. (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 459, p. 547; see also *Kappel v. Bartlett* (1988) 200 Cal.App.3d 1457, 1463, 246 Cal.Rptr. 815.) It has been "interpreted broadly to encompass the entire range of 'procedures' incident to litigation." (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 104, 101 Cal.Rptr. 745, 496 P.2d 817, fn. 4 (*Barquis*).)
>
> "[T]he essence of the tort [is] ... misuse of the power of the court; it is an act

---

23. *Id.*

24. *Id.*

25. Compl. ¶ 46, Dckt. 1.

26. Bankr. E.D. Cal. No. 11–31221, Amended Chapter 13 Plan, Dckt. 15; *See also* Civil

Minute Order Confirming Amended Chapter 13 Plan, Dckt. 48.

27. 37 Cal.4th 1048, 1056–1057, 39 Cal. Rptr.3d 516, 128 P.3d 713 (2006).

done in the name of the court and under its authority for the purpose of perpetrating an injustice." (*Meadows v. Bakersfield S. & L. Assn.* (1967) 250 Cal. App.2d 749, 753, 59 Cal.Rptr. 34.) To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings. (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1168, 232 Cal.Rptr. 567, 728 P.2d 1202 (*Oren Royal Oaks Venture* ).)

The alleged demand by Defendants in the Notice of Mortgage Payment Change does not rise to abuse of process. Defendants are merely asserting what they believe is the proper amount owed and are providing notice through the Notice of Mortgage Payment Change. There are no allegations in the Complaint that the power of the court has been improperly used. While it is true that if the Plaintiffs elected not to object to the amount in the Notice of Payment Change, under the confirmed Chapter 13 Plan the Trustee would then begin making payments at the higher amount. If the Plaintiffs failed to increase their plan payments, the Chapter 13 Trustee would then file a motion to dismiss the Chapter 13 case. The Plaintiffs, as any other person, have ready access to the courts and may contest a position or rights asserted by any creditor in the bankruptcy case. Merely because Plaintiffs disagree with Defendants' computation of a mortgage payment change does not result in this Notice creating a state law claim for abuse of process.

The Plaintiffs have failed to present the court with any plausible claim for violation of the automatic stay. The court grants the Defendants' Motion to Dismiss on the third cause of action for failure to state a claim for which relief can be granted.

## PLAINTIFFS SUFFICIENTLY ALLEGE THAT DEFENDANTS ARE DEBT COLLECTORS UNDER THE ROSENTHAL ACT IN THE FOURTH CAUSE OF ACTION

In the Motion to Dismiss, Defendants assert that the Complaint fails to set forth sufficient factual matters to establish plausible grounds that Defendants are "debt collectors" as that term is defined under the Rosenthal Act and the FDCPA. Beginning with the later contention, Defendants are correct, Plaintiffs do not allege that Defendants are debt collectors under the FDCPA. The Fourth Cause of Action is clear that relief is sought only under the Rosenthal Act.

The Complaint alleges the following concerning the relationship between Defendants and the Plaintiffs as relevant to this issue:

A. Plaintiffs have a debt (loan) they owe to U.S. Bank, N.A. Compl. ¶ 11.

B. Bank of America, N.A. claims that Plaintiffs owe Bank of America, N.A. money. Compl. ¶ 8.

C. U.S. Bank, N.A. claims that Plaintiff owe U.S. Bank, N.A. money. Compl. ¶ 10.

D. Bank of America, N.A. services the debt Plaintiff's owe to U.S. Bank, N.A. Compl. ¶ 11.

E. The debt owed to U.S. Bank, N.A. is secured by real property commonly known as 7330 Meadowlark Lane, Sheridan, California. Compl. ¶ 11, Proof of Claim No. 1 filed by Defendants.

F. Bank of America, N.A. and U.S. Bank, N.A. have miscomputed the amount owed for monthly install-

ments on the debt. Compl. ¶¶ 18, 19.

G. Bank of America, N.A. and U.S. Bank, N.A. have demanded payment of monthly installments in an amount greater than owed by the Plaintiffs. Compl. ¶ 20.

H. Bank of America, N.A. and U.S. Bank, N.A. have misstated the amount owed monthly by the Plaintiffs and have demanded payment of monies in excess of what is owed by the Plaintiffs. Compl. ¶ 78.

**The Rosenthal Act Defines Who is a Debt Collector for Purposes of California Law**

Defendants direct this court to several trial court decisions for the proposition that a creditor or loan servicer cannot be a debt collector under the Rosenthal Act. The first cited decision is *Caballero v. Ocwen Loan Servicing.*[28] In this unreported decision, that court addressed a claim arising under the FDCPA, not the Rosenthal Act.[29]

The second cited decision is *Glover v. Fremont Investment and Loan.*[30] In *Glover*, the trial court summarily dismissed the Rosenthal Act claim based upon the

holding in *Caballero*, without discussion of the statutory definition of a debt collector under the Rosenthal Act. Rather, the decision cites *Caballero*, an FDCPA case, as the authority for the proposition now asserted by Defendants that a creditor or servicing agent for a debt secured by real estate is not a debt collector under the Rosenthal Act.[31]

This court acknowledges that some trial courts have interpreted the Rosenthal Act in a manner that mortgage service companies, taking actions to obtain payment for the original creditor or the assignee of the original creditor, are not "debt collectors" as defined under the FDCPA and Rosenthal Act because the activities are related to the ultimate foreclosure on real property securing the debt. In its extensive Reply Brief, Defendants cite a series of mostly unreported decisions from several district courts. Though withholding these citations until filing its reply brief (ensuring that Plaintiffs could not address in writing the numerous newly cited decisions), the court has reviewed these mostly unreported additional decisions upon which Defendants rely: *Patacsil v. Wilshire Credit Corporation;*[32] *Pittman v. Barclays Capital Real Estate, Inc.;*[33] *Pok v. American Home Mortgage Servicing,*

---

**28.** 2009 WL 1528128, 2009 U.S. Dist. LEXIS 45213 (N.D.Cal.2009).

**29.** *Id.* at *1, 2009 U.S. Dist. LEXIS 45213 at *1.

**30.** 2009 WL 5114001, 2009 U.S. Dist. LEXIS 117890 (N.D.Cal.2009).

**31.** *Id.* at *8–*9, 2009 U.S. Dist. LEXIS 117890 at *24–*25. The Rosenthal Act and FDCPA claims was dismissed because the complaint in that case merely stated "Plaintiff alleges that 'BANK 2 violated the Act in one or more of the following ways' and then lists the requirements of the statute ... These claims fail for an additional reason: Deutsche is not a 'debt collector' within the meaning of the debt collection statutes. Rather, Plaintiff alleges that Deutsche was the loan servicer. Compl.

¶ 19. Therefore, amendment of these claims against Deutsche would be futile. See e.g., *Caballero v. Ocwen Loan Serv.*, 2009 U.S. Dist. LEXIS 45213, 2009 WL 1528128 *1 (N.D.Cal. 2009) ('creditors, mortgagors and mortgage servicing companies are not 'debt collectors' and are exempt from liability under the [FDCPA] ... Defendant Ocwen is a 'loan servicer.' Therefore it is not a 'debt collector' and no claim can be stated against it under the FDCPA.')" *Id.*

**32.** 2010 WL 500466, at *3–4, 2010 U.S. Dist. LEXIS 10414, at *8–9 (E.D.Cal. Feb. 5, 2010).

**33.** 2009 WL 1108889, at *1, 2009 U.S. Dist. LEXIS 34885, at *3 (S.D.Cal. Apr. 24, 2009).

Inc.;[34] *Gallegos v. Recontrust Co.;*[35] *Fuentes v. Duetsche Bank;*[36] *Padayachi v. Indymac Bank;*[37] *Sipe v. Countrywide Bank;*[38] *Pontiflet–Moore v. GMAC Mortgage;*[39] and *Rosal v. First Federal Bank of California.*[40]

A common thread running through these decisions is the conclusion that a debt secured by a deed of trust cannot be subject to the Rosenthal Act, and therefore any collection activities to obtain payment on that secured debt are not subject to the Rosenthal Act. Many of the cases relied on by Defendants cite to *Ines v. Countrywide Home Loans, Inc.,*[41] as the seminal case for this proposition. The court in *Ines* came to the conclusion that since foreclosing on real property is not the collection of a debt under the FDCPA, then it would similarly not be a debt under the Rosenthal Act because some provisions of the FDCPA have been incorporated into the Rosenthal Act. As discussed herein, the incorporation of several FDCPA provisions into the Rosenthal Act does not amend the California definition of debt collector under the Rosenthal Act and replace it with the more limited definition under the FDCPA.

The court also notes that Defendants' proposition that a debt is not subject to the FDCPA if it is secured by real or personal property, and therefore neither should the collection of such debts be subject to the Rosenthal Act, is not universally accepted. Contrary decisions not supporting the Defendants arguments, which were not cited to or addressed by Defendants in their original Memorandum of Points and Authorities or the extensive Reply Brief, include both Circuit Court of Appeals and District Court decisions. One example is *Wilson v. Draper & Goldberg, P.L.L.C.,*[42] in which the Court of Appeals concluded that the debt secured by a deed of trust continued to be subject to the FDCPA even after the foreclosure was commenced.

We disagree. Wilson's "debt" [secured by a deed of trust] remained a "debt" even after foreclosure proceedings commenced. See *Piper v. Portnoff Law Assocs.,* 396 F.3d 227, 234 (3d Cir. 2005) ("The fact that the [Pennsylvania Municipal Claims and Tax Liens Act] provided a lien to secure the Pipers' debt does not change its character as a debt or turn PLA's communications to the Pipers into something other than an effort to collect that debt."). Furthermore, Defendants' actions surrounding the foreclosure proceeding were attempts to collect that debt. See *Romea v. Heiberger & Assocs.,* 163 F.3d 111, 116 (2d Cir.1998) (concluding that an eviction notice required by statute could also be an attempt to collect a debt); *Shapiro & Meinhold v. Zartman,* 823 P.2d 120, 124 (Colo.1992) ("[A] foreclosure is a method of collecting a debt by acquiring and selling secured property to satisfy a debt.").

**34.** 2010 WL 476674, at *2–3, 2010 U.S. Dist. LEXIS 9016, at *7–8 (E.D.Cal. Feb. 2, 2010).

**35.** 2009 WL 215406, at *1, 2009 U.S. Dist. LEXIS 6365, at *3 (S.D.Cal. Jan. 29, 2009).

**36.** 2009 WL 1971610, at *1–2, 2009 U.S. Dist. LEXIS 57931, at *3 (S.D.Cal. July 8, 2009).

**37.** 2010 WL 1460309, at *2, 2010 U.S. Dist. LEXIS 46115, at *6 (N.D.Cal. April 7, 2010).

**38.** 2010 WL 2773253, at *17–*18, 2010 U.S. Dist. LEXIS 70320, at *46–*47 (E.D.Cal. July 13, 2010).

**39.** 2010 WL 432076, at *2, 2010 U.S. Dist. LEXIS 11043, at *6 (E.D.Cal. Jan. 15, 2010).

**40.** 671 F.Supp.2d 1111, 1135 (N.D.Cal.2009).

**41.** 2008 WL 4791863 at *1–2, 2008 U.S. Dist. LEXIS 88739 at *3 (S.D.Cal. Nov. 3, 2008).

**42.** 443 F.3d 373 (4th Cir.2006).

Defendants' argument, if accepted, would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt. We see no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods. See *Piper*, 396 F.3d at 236 ("We agree with the District Court that if a collector were able to avoid liability under the [Act] simply by choosing to proceed *in rem* rather than *in personam*, it would undermine the purpose of the [Act].") (internal quotation marks omitted).[43]

Other cases rejecting a non-statutory exemption from the FDCPA or Rosenthal Act because the debt is secured by real or personal property include: *Glazer v. Chase Home Finance LLC*,[44] (finding a home loan is a debt subject to the FDCPA, which governs the conduct of debt collectors for both secured and unsecured debts); *Reese v. Ellis, Painter, Ratterree & Adams, LLP*,[45] (finding a promissory note secured by a mortgage is a debt subject to the FDCPA); *Vargas v. HSBC Bank USA, N.A.*,[46] (finding the FDCPA covers foreclosure-related debt collection activities); *McGrew v. Countrywide Home Loans, Inc.*,[47] (stating "[i]t is plain that the California legislature understands the Rosenthal Act may apply to foreclosure proceedings ... the omission of the lenders and servicers from Cal. Civ.Code § 2924(b) means that such actors may be held liable for any unlawful debt collection activities

during foreclosure."); *Castrillo v. American Home Mortgage Servicing, Inc.*,[48] (finding a debt collector is not immunized from liability for violating the FDCPA merely because the debt is secured by a deed of trust and the collector is proceeding with a foreclosure sale); and *Kojetin v. C U Recovery, Inc.*,[49] (finding a promissory note secured by a vehicle is a debt subject to the FDCPA).

These reported decisions cast doubt on the basic premise underlying the unreported decisions relied on by the Defendants that "a debt is not subject to the FDCPA if it is secured by a mortgage or deed of trust, therefore it could not be covered by the Rosenthal Act."

## ANALYSIS AND STATUTORY CONSTRUCTION OF THE ROSENTHAL ACT

The court's analysis begins with the plain language of the Rosenthal Act itself. It is incumbent on this court to interpret and apply state law as would the California Supreme Court.[50] The rules of statutory construction utilized by the California Supreme Court are essentially the same as used by the courts for interpreting federal law. To determine the intent of the statute or ordinance, the court first looks to the plain language and ordinary meaning of the words used. The words are read in context of the statute, considering the nature and purpose of the enactment. If the language is clear, then no further interpretation of the statute is necessary. If the language is ambiguous,

---

**43.** *Id.* at 376.

**44.** 704 F.3d 453, 460 (6th Cir.2013).

**45.** 678 F.3d 1211, 1216–1217 (11th Cir.2012).

**46.** 2012 WL 3957994, at *5, 2012 U.S. Dist. LEXIS 128661, at *16 (S.D.Cal.2012).

**47.** 2009 WL 1803455 (S.D.Cal.2009).

**48.** 670 F.Supp.2d 516, 523–24 (E.D.La.2009).

**49.** 212 F.3d 1318 (8th Cir.2000).

**50.** *Aetna Cas. & Sur. Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir.1993).

then the court considers extrinsic evidence, which includes the legislative history, public policy, and the statutory scheme of which the statute is a part.[51] Finally, if after reviewing the plain language and extrinsic aids the meaning of the statute remains unclear, the court, proceeding cautiously, applies reason, practicality, and common sense to the statute.[52]

### Basic Statutory Definitions Under the Rosenthal Act

The California Legislature defines who is a "debt collector" for purposes of California law in the Rosenthal Act, as follows,

> The term "debt collector" means any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. The term includes any person who composes and sells, or offers to compose and sell, forms, letters, and other collection media used or intended to be used for debt collection, but does not include an attorney or counselor at law.[53]

California law defines "debt collection," to be "any act or practice in connection with the collection of consumer debts."[54] A consumer debt is statutorily defined to be "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction."[55] Finally, a "consumer credit transaction" is statutorily defined to be "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes."[56]

This is a very broad definition requiring only,

a. That a person (natural or fictitious, § 1788.2(g)),

b. In the ordinary court of his, her, or its business,

c. On behalf of him/her/itself or others,

d. Engage in any act or practice in connection with the collection of,

e. Money, property or their equivalent, due or owing relating to,

f. A transaction between a natural person and another person,

g. For property, services or money is acquired on credit by that natural person from such other person, and

h. Was primarily for personal, family, or household purposes of the natural person.

Nothing in the statutory definition excludes a consumer debt from the Rosenthal Act merely because it is secured by real or personal property. Further, nothing in the statutory definition excludes a person from the Rosenthal Act merely because he, she, or it is attempting to collect a consumer debt that is for a transaction that he, she or it entered into with the consumer. By its plain language, the term "debt collector" as used in the Rosenthal Act includes a creditor who is attempting to collect any consumer debt owed to that creditor.[57]

---

51. *Professional Engineers in California Government v. Kempton,* 40 Cal.4th 1016, 1037, 56 Cal.Rptr.3d 814, 155 P.3d 226 (2007).

52. *Woodland Park v. City of East Palo Alto Rent Stabilization Board,* 181 Cal.App.4th 915, 920, 104 Cal.Rptr.3d 673 (2010).

53. Cal. Civ.Code § 1788.2(c).

54. *Id.* § 1788.2(b).

55. *Id.* § 1788.2(f).

56. *Id.* § 1788.2(e).

57. The widely used California Practice Guide, *Enforcement of Judgments and Debts,* also states, "**Creditors included:** Thus, the state

In 1999 the California Legislature grafted several FDCPA provisions onto the Rosenthal Act. California Code of Civil Procedure § 1788.17 provides,

> Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code. However, subsection (11) of Section 1692e [58] and Section 1692g [59] shall not apply to any person specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title 15 of the United States Code or that person's principal. The references to federal codes in this section refer to those codes as they read January 1, 2001.

The California Legislature carefully excluded a limited subclass of Rosenthal Act statutorily defined debt collectors from only two of the state law obligations arising under grafted on 15 U.S.C. § 1692e(11) (initial disclosure, commonly called the Mini–Miranda, to be given in the first collection communication with the consumer debtor) and § 1692g (requirement to validate the debt if consumer requests in writing within 30 days of the initial collection communication). However, all of the other grafted FDCPA provisions apply in full force and effect for all Rosenthal Act defined debt collectors.

The subclass of Rosenthal Act defined debt collectors given an exemption from these two provisions are (1) "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;" or (2) "any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts; . . . ." [60] Clearly, the only reason that such exceptions were required to be created by the California Legislature to the definition of a Rosenthal Act debt collector can be that without them, officers or employees of the creditor, the creditor, and a creditor owned and controlled collection agency subsidiary, are otherwise within

FDCPA [Rosenthal Act] applies both to *third party debt collectors* (e.g. collection agencies) and to *creditors* who regularly collect consumer debts." California Practice Guide, Enforcement of Judgments and Debts ¶ 2:127 (Judge Alan M. Ahart, The Rutter Group 2012, Rev. # 1 2011) (emphasis in original).

**58.** 15 U.S.C. 1692e(11) requires that the FDCPA debt collector provide the Mini–Miranda, a disclosure in the initial written communication, and initial oral communication if it precedes the initial written communication, with the debtor that the communication is from a debt collector and that it is an attempt to collect a debt.

**59.** 15 U.S.C. § 1692g requires that the initial written communication disclose to the debtor (1) the amount of the debt, (2) the name of the creditor to whom the debt is owed, (3) a statement if the debtor does not dispute the debt in writing within 30 days the debt collec-

tor will assume the debt is valid, (4) that if the debt is disputed in the 30–day period the debt collector will obtain verification of the debt from the creditor, and (5) that upon written request within the 30–day period the debt collector will provide the debtor with the name and address of the original creditor, if different from the current creditor for whom the debt is being collected.

A statutory exception is provided in 1692(g)(e) that forms and notices not relating to the collection of the debt and required by the Internal Revenue Code (26 USCS §§ 1 et seq.), title V of Gramm–Leach–Bliley Act (15 USCS §§ 6801 et seq.), or federal or state law relating to notice of data security breach or privacy are not treated as a "communication" under the FDCPA.

**60.** 15 U.S.C. 1692a(6)(A), (B).

the broad Rosenthal Act definition of a debt collector.

■ In considering the Defendants' argument and the authorities it has cited, it is critical to understand that the FDCPA statutory definition of a debt collector differs significantly from the California state law definition of a debt collector under the Rosenthal Act. Under the FDCPA a debt collector is defined to be,

> [a]ny **person who** uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who **regularly collects** or attempts to collect, directly or indirectly, **debts owed or due or asserted to be owed or due another.** Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the **term includes any creditor who,** in the process of collecting his own debts, **uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.** For the purpose of section 808(6) [15 UCS § 1692f(6)], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. . . . [61]

First, with the limited exception of a creditor using an alias to make it appear that a third-party is involved, the FDCPA defined debt collector is limited to a person attempting to obtain payment on an obligation which was originally owed to another person. Commonly an FDCPA covered debt collector is called a "third-party debt collector." (The original creditor and debtor being the first two parties to the transaction.)

In grafting the FDCPA onto state law, the California Legislature recognized this difference, creating the limited exceptions for the Mini–Miranda and validation notice requirements for creditors who are debt collectors under the Rosenthal Act. However, the basic provisions of the Rosenthal Act that a person shall not lie, cheat, steal, threaten, or abuse a consumer in attempting to obtaining payment on a consumer debt do not interfere with the good faith collection of the consumer debt—whether it be secured or unsecured. To the extent that state law provides a procedure for obtaining payment on the debt, such as a statutory non-judicial foreclosure process, the California Legislature has provided the creditor, third-party debt collector, servicing agency, and consumer with clear benchmarks by which the collection activities can be measured. There is nothing inconsistent with the requirements of the Rosenthal Act and it being applied to a creditor with a secured claim.

### State Law Provides an Express Exemption From The Rosenthal Act Only For The Trustee Under a Deed of Trust

Defendants' argument that there needs to be a non-statutory, implied exemption from the Rosenthal Act for a consumer debt secured by a deed of trust is belied by the fact that the California Legislature has already expressly addressed the issue. California Civil Code § 2924(b) provides a statutory exemption from the Rosenthal Act for a trustee under a deed of trust as follows,

> In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage. **In performing the**

---

61. 15 U.S.C. § 1692a(6) (emphasis added).

acts required by this article, a trustee shall not be subject to Title 1.6c (commencing with Section 1788) of Part 4.[62]

The California Legislature has carefully constructed the exemption to apply only (1) to the trustee under a deed of trust and (2) only to that trustee performing the acts required under Article 1, Mortgages in General, of Chapter 2, Mortgages, of Title 14 of the California Civil Code, Lien. In enacting this exemption from the Rosenthal Act, the California Legislature has clearly limited to the acts of a trustee exercising the powers under a deed of trust. The California Legislature has not created, or intended to create an implied, free ranging exemption by which a trustee under a deed of trust (and thereby the creditor owed the consumer debt) becomes an unregulated debt collector for any and all purposes.

If Defendants were correct that the Rosenthal Act did not apply to debts which were secured by real property or for which foreclosure proceedings could be commenced or were being prosecuted, then no legislative reason would have existed for enacting California Civil Code § 2924(b).

**Legislative History of the Rosenthal Act[63]**

Given the dearth of statutory analysis presented to the court by the parties, in addition to the plain language of the statute the court has reviewed the legislative history available from the California State Archives maintained by the California Secretary of State. California Senate Bill 237, 1977, is the legislation by which the Rosen-

thal Act (formerly known as the Robbins–Rosenthal Fair Debt Collection Practices Act) was enacted. It is clear from the legislative history that the plain language of the statute means what it says—all debt collectors, whether original creditors, agents of original creditors, or third-party collection agencies, for all consumer credit transaction debts, whether secured or unsecured, are covered by the Rosenthal Act.

The Assembly Judiciary Committee Analysis issued for the August 11, 1977 hearing on for SB 237, states,

> This measure governs all debt collection practices arising from the extension of credit if the credit was obtained primarily for personal, family, or household purposes. **Regulated debt collectors include any person who,** in the **ordinary course of business, on behalf of himself** or others, **engages in debt collection** and any person who composes and sells forms, letters, and other collection media used for debt collection. Debt collectors currently licensed by the Bureau of Collections and Investigations [traditional third-party collection agencies] would be subject to regulation by this measure. Attorneys are specifically exempted.[64]

After SB 237 was passed by the Legislature, the California Department of Consumer Affairs issued its Enrolled Bill Report to then Governor Edmund G. Brown, Jr., stating,

> The collection practices of collection agencies licensed by the Bureau of Collection and Investigative Services [tradi-

---

**62.** Cal. Civ.Code § 2924(b) (emphasis added).

**63.** The legislative history documents are filed in this Adversary Proceeding as a separate addendum to this Memorandum Opinion and Decision, set as the next docket entry in order. This addendum may be reviewed using

PACER access to the court's public records or at the courthouse itself.

**64.** Fair Debt Collection Practices Act Bill Digest: Hearing on California SB 237 Before the Assembly Comm. on Judiciary, August 11, 1977 (emphasis added).

tional third-party collection agencies] are regulated by the Bureau. Licensed collection agencies are responsible for about 10% of the debt collection in California. The other 90% is performed by in-house collectors (for banks, retailers, finance companies, and soon.) . . .

The Robbins–Rosenthal Fair Debt Collection Practices Act [renamed the Rosenthal Act in AB 969, 1999] would be **a comprehensive act governing the debt collection practices of all person who in the ordinary course of business on behalf of themselves** or others engage in the collection of consumer debts. The Act would thus **apply to debt collectors licensed by the Bureau of Collection and Investigative Services (CIS) and to in-house collectors** (such as bankers, credit unions, savings and loans, personal property brokers, industrial loan companies, and retailers) . . .

. . .

A. SPECIFIC FINDINGS

The Robbins–Rosenthal Fair Debt Collection Practices Act would be a comprehensive act governing the debt collection practices of **all persons who in the ordinary course of business on behalf of themselves or others** engage in the collection of consumer debts. The Act would thus apply to debt collectors licensed by the Bureau of Collection and Investigative Services (CIS) and to in-house collectors (such as bankers, credit unions, savings and loans, personal property brokers, industrial loan companies, and retailers) . . .

D. RECOMMENDATION: Sign

The Department of Consumer Affairs worked with Senator Robbins on the August amendments and we are satisfied that this amended bill would constitute a significant improvement in consumer protection against unfair debt collection practices. While the bill's provisions are in some cases less strict than the new regulations governing the collection agencies licensed by the Bureau of Collection and Investigative Services, **we believe that the bill's impact on the presently unregulated collection practices of in-house collectors— whose activities make up more than 90% of debt collection**—would represent a positive gain for consumers.[65]

The Rosenthal Act was enacted specifically to make the creditor, not merely the third-party collection agency, subject to the California debt collection laws. This is consistent with the plain language of the statute defining debt collector expansively, so as to address the 90 percent of the otherwise unregulated creditor debt collection activities.

The court has also reviewed the legislative history for the 1999 amendments to the Rosenthal Act, AB 969, by which specific provisions of the FDCPA were made part of state law. The Senate Rules Committee Report, issued for the Third Reading of AB 969 on the Senate Floor, states,

This bill provides that **every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j,** inclusive, of Title 15 of the United

---

**65.** California Department of Consumer Affairs, Enrolled Bill Report for SB 237, September 15, 1977 (emphasis added). *See also* California Department of Finance, Enrolled Bill Report for SB 237, September 15, 1977, stating,

This bill would substantially expand the coverage of debt collection law. Under ex-

isting law, only the debt collection practices of *licensed* collection agencies are regulated. This bill would increase the coverage of such law as to include in-house debt collectors such as banks and retailers (approximately 90 percent of the debt collectors in the State).

States Code. These sections provide, among other provisions, that a collector may not harass, oppress, or abuse a debtor, nor use obscene language. Third parties may only be contacted with the debtor's permission.

. . .

This duel scheme of regulation [FDCPA and Rosenthal Act] can sometimes become confusing, rendering state law unused. The sponsor argues this bill is needed in order to establish clear lines of acceptable behavior, pointing out that other states, such a Pennsylvania and Massachusetts, have similarly incorporated federal provisions to harmonize state and federal law. The [California Attorney General] adds that, "**consistent federal and state standards** would facilitate compliance and enforcement and **provide a level playing field for all engaged in debt collection activity.**" [66]

The Senate Judiciary Committee Analysis contains similar language that the FDCPA provisions shall apply to all debt collectors (with the specified two exceptions), and adds the further information from the sponsor of AB 969, the California Attorney General,

> The bill's sponsor, the Attorney General, (AG) adds, "the Attorney General's office has sponsored AB 969 to **harmonize state and federal law by applying federal debt collection standards and remedies to all parties defined as debt collectors under California law.**" [67]

Again, with the 1999 amendments the legislative history is clear—all provisions of the Rosenthal Act, including the grafted on FDCPA provisions (subject to the two express exceptions), shall apply to all debt collectors as defined under the Rosenthal Act. There is no evidence of any non-statutory intent or belief that an unstated general exception was created using the federal definition of debt collector to change the definition in the Rosenthal Act.

## COMPLAINT SUFFICIENTLY ALLEGES THAT DEFENDANTS ARE DEBT COLLECTORS SUBJECT TO THE ROSENTHAL ACT

■ While leaving a little bit to be desired, in the context of Defendants' contention that a creditor with a claim secured by a deed of trust is not a "debt collector" as statutorily defined by the Rosenthal Act, Plaintiffs have sufficiently alleged that Defendants are debt collectors to survive this Motion to Dismiss. The Motion does not state with particularity the grounds by which the legal conclusion is asserted that "Plaintiffs fail to properly allege that Defendants are debt collectors as defined under the Rosenthal Fair Debt Collection Practices Act (California Civil Code 1788)." Fed.R.Civ.P. 7(b), Fed. R. Bankr. P. 7007. The Points and Authorities, to the extent that they constitute the motion, assert that a creditor and mortgage service company cannot, as a matter of law, be a debt collector under the Rosenthal Act. As addressed above, such a contention is erroneous.

Here, Plaintiffs are natural persons who are the Chapter 13 debtors. Defendants assert that they are owed a debt which is secured by the Plaintiffs' residence, 7330 Meadowlark Lane. This is identified as the Plaintiffs' principal residence in the Notice of Payment Change filed by the Defendants which is the subject of the Complaint. No contention has been made that

---

**66.** California Senate Rules Committee, Senate Floor Analysis for AB 969, July 23, 1999 (emphasis added).

**67.** Hearing on AB 969 Before the California Senate Judiciary Committee, 1999–2000 Regular Session, July 7, 1999 (emphasis added).

this claim does not arise from a consumer credit transaction.[68] From the Complaint, Notice of Payment Change, and Schedules in the bankruptcy case, the debt being collected is a consumer debt.

The only possible missing element is that Defendants in the ordinary course of business attempt to collect debts covered by the Rosenthal Act. The court takes judicial notice that both BANA and U.S. Bank regularly collects consumer debts from natural persons, whether they are voluntary payments, judicially enforced payments, bankruptcy plan payments, non-judicial foreclosures, or through the exercise of the power to sell personal property under the California Commercial Code, for obligations which are consumer debts.[69] There can be little dispute that it is commonly known in the community, state, and nation that both of these banks regularly collect their own consumer debts from nat-

ural persons, as well as other debts for trusts or other entities for which they have accepted such a responsibility (such as the trustee of a mortgage loan portfolio trust). If either or both of these Defendants seriously believe that the court's judicial notice is incorrect, they can address it in a motion for summary judgment or other appropriate motion based on this limited issue.

Given the narrow scope of the grounds in the Motion to Dismiss, that the Defendants are not debt collectors as defined under the Rosenthal Act, that portion of the motion seeking to dismiss the Fourth Cause of Action is denied.[70]

## CONCLUSION

The court grants the Motion to Dismiss Plaintiffs' Third Cause of Action and denies the Motion to Dismiss the Fourth

---

**68.** On the Petition filed in the Plaintiffs' bankruptcy case they list the subject Property as their Street Address. Petition, Bankr. E.D. Cal. 11–31221 Dckt. 1. The Petition also states that the Plaintiffs' debts are primarily consumer debts as defined under 11 U.S.C. § 101(8), "primarily for a personal, family, or household purpose."

**69.** Where certain indisputable facts are so within the common and general knowledge of the community, or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, the judicial notice doctrine serves as a substitute for formal proof. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed.R.Evid. 201(b). Even where a fact may not be of common knowledge, so long as the fact is capable of immediate and accurate determination from a credible source, a court may take judicial notice. *Id.* at 201(b)(2).

No formula exists for determining the appropriate use of judicial notice under Federal

Rule of Evidence 201(b)(2). *See* 2 McCormick On Evid. § 330 (6th ed.). Frequently, courts utilize judicial notice with regard to information contained in public records. *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986), *abrogated in part on other grounds by Astoria Federal Savings and Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991).

**70.** The denial of the Motion to Dismiss the Fourth Cause of Action should not be misinterpreted as a determination by the court that the alleged conduct would constitute a violation of the Rosenthal Act. More nuanced issues exist concerning the interplay of the bankruptcy claims process, confirmation of a bankruptcy plan, the correct amount of payments which the court orders under a confirmed plan, litigation privilege, and the extent to which the Bankruptcy Code and Federal Rule of Bankruptcy Procedure preempt state law with respect to the federal judicial bankruptcy process. What is clear is that a contention that a creditor or creditor's agent attempting to obtain payment on a debt is not a "debt collector" under Rosenthal Act is incorrect.

Cause of Action. No leave is granted to file an amended complaint. Taking the Plaintiffs' recitation of the facts as true, there is little which could be corrected through an amended pleading. The Plaintiffs may file a motion to amend the Complaint, after the answer is filed, to the extent that they believe that sufficient factual allegations can be alleged in good faith to state a plausible claim for violation of the stay consistent with the established law in this Circuit.

Bank of America, N.A. and U.S. Bank, N.A., as Trustee for Certificate holders of LXS 2007–16N Trust Fund, filed their respective answers after the oral argument and the court discussed its ruling on this Motion. Dckt. 30.

## ADDENDUM TO MEMORANDUM OPINION AND DECISION [LEGISLATIVE HISTORY]

A. Assembly Judiciary Committee Analysis for SB 237, August 1977

B. California Department of Consumer Affairs—Enrolled Bill Report for SB 237, September 1977

C. California Department of Finance—Enrolled Bill Report for SB 237, September 1977

D. Senate Rules Committee Report for AB 969, July 1999

E. Senate Judiciary Committee Analysis for AB 969, July 1999

### *BILL DIGEST*

---

*BILL:*      SB 237             HEARING DATE: 8/11/77
               (As amended 8/10/77)

*AUTHOR:*     Robbins

*SUBJECT:*    Fair Debt Collection Practices Act

*BILL DESCRIPTION:*

At common law, a creditor has the right to urge payment of a just debt and to threaten to resort to proper legal procedures to enforce payment of the debt. These activities may result in an invasion of the debtor's privacy or cause some mental anguish or anxiety. However, a creditor will be held liable only if the action of the creditor results in the intentional infliction of mental anguish, a severe invasion of the debtor's right to privacy, defamation, or slander.

In addition, if a debt account is assigned to a party who qualifies as a collection agency under provisions of the Business and Professions Code, the debt collector must conform to debt collection standards prescribed by the Bureau of Collection and Investigative Service. Licensed debt collectors include most independent debt collection agencies that are not affiliated with a retail business.

This measure promulgates the Robbins–Rosenthal Fair Debt Collection Practices Act, with the following provisions, with the most recent amendments reflected in strike out or underline:

*AMENDED IN COMMITTEE: Technical amendments added in Committee

A. *Scope of Coverage.*

This measure governs all debt collection practices arising from the extension of credit if the credit was obtained primarily for personal, family, or household purposes. Regulated debt collectors include any person who, in the ordinary course of business, on behalf of himself or others, engages in debt collection and any person who composes and sells forms, letters, and other collection media used for debt collection. Debt collectors currently licensed by the Bureau of Collections and Investigations would be subject to regulation by this measure. Attorneys are specifically exempted.

B. *Prohibited Collection Practices.*

1. To use or threaten to use physical force or violence; to cause harm to the person, or the reputation or property of any person.

2. To threaten that the failure to pay on a consumer debt will result in an accusation that the debtor has committed a crime; to threaten that the assignment of the debt will result in the loss of defenses to the debt; and to threaten that nonpayment will result in the arrest of the debtor, or the garnishment, attachment, or sale of the property of debtor.

3. To use obscene or profane language; to place telephone calls without disclosure of the caller's identity *or the name of the licensed collection agency;* to cause a telephone to ring repeatedly; and to communicate, by phone or in person, with such frequency as to be unreasonable.

4. *To communicate with the debtor's employer unless it is either made for the purpose of verifying the* debtor's employment, locating the debtor, effecting garnishment, or discovering the existence of medical insurance, or with the written consent of the debtor or his attorney. The communication with the employer must be in writing unless the written communication receives no response within 15 days. One oral communication without prior written contact is permitted for the purpose of verifying the debtors's employment.

5. To communicate information to any member of debtor's family, other than spouse or parents or guardian of a minor, prior to obtaining a judgment against the debtor, unless the purpose of communication is to locate the debtor or *written* consent has been given.

6. To use any false representation that a debt collector is an attorney; to represent that a debt collector is bonded, or is affiliated with any federal, state, or local government *unless the collector is actually employed by the governmental agency;* to use any document that falsely represents that it was issued by a court or agency of any federal, state or local government; to represent falsely the true nature of the services rendered by the collection agency.

7. Obtaining an affirmation of a debt discharged in bankruptcy unless the debtor is notified that he is not legally obligated to make such an affirmation.

8. Collecting from the debtor any debt collection fee unless permitted by law.

9. To represent falsely that a legal proceeding *has been, is about to be,* or will be instituted unless payment of a consumer debt is made.

10. Communicating with the debtor, other than by a statement of the account, when the debt collector has been notified that the debtor is represented by counsel.

11. *Any communication by a licensed collection agency to a debtor demanding money unless the claim has been actually assigned to the collection agency.*

C. *Prohibited Debtor Practices.*

1. To apply for credit when a person knows there is no reasonable probability of that person's ability to meet the obligation created.

2. To knowingly submit false or inaccurate information or willfully conceal adverse information bearing on such person's credit worthiness, credit standing or credit capacity, or mode of living-which may reasonably serve as a factor in establishing such person's eligibility to credit.

3. To fail to notify *within a reasonable time* the creditor of any change in a person's name, address, or employment.

4. To consummate any consumer credit transaction if a person knows his credit privileges have been terminated or suspended.

5. To fail to notify *by telephone, telegraph, letter or any other reasonable means and within a reasonable time,* the creditor that an unauthorized use of the account has occurred or that there has been a theft of the credit card. Subsections 3, 4, and 5 only apply after the creditor provides the debtor with conspicuous *written* notice.

D. *Enforcement.*

A violation of the Fair Debt Collection Practice Act entitles the debtor to bring an individual action for actual damages; if there has been a willful and knowing violation of the act, a prevailing debtor is entitled to actual damages and punitive damages of not less than $100 nor greater than $1000. *The prevailing party is entitled to the costs of the action. A prevailing debtor is entitled to reasonable attorney's fees; a prevailing creditor may be awarded attorney's fees upon a finding by the court that the debtor's prosecution or defense was not in good faith.* A willful and knowing violation; in addition; constitutes a misdemeanor. However, there shall be no civil liability if within 15 days either after discovering a violation which is able to be cured, or after receipt of a written notice of such violation, the debt collector notifies the debtor of the violation and takes corrective steps. There shall be no civil liability if the debt collector shows that the violation was not intentional and resulted despite the maintenance of procedures to avoid such violations. Any *intentional* violation of the debtor's responsibility, as enumerated in the Act, may be raised as a defense by the debt collector if such a violation is pertinent or relevant to any claim.

A one-year statute of limitation is prescribed for bringing an action to enforce the Act.

Class actions are specifically prohibited.

*The bill specifies that the remedies provided herein are intended to be cumulative and are in addition to any other procedures, rights or remedies under any other provision of law.*

Additionally this bill replaces specific provisions in the Collection Agency Act which prohibit a licensee from publishing a "deadbeat list", the use of profanity in the collection of claims, and the use of documents which resemble governmental or legal forms, with a general provision prohibiting the practice of any act prohibited by the Fair Debt Collection Practice Act. *The Director may establish and enforce implementing regulations within the subject area of the Fair Debt Collection Practices Act and the willful violation of any provision of the Act shall be sufficient grounds for the revocation of the license of a licensee or other disciplinary action. The measure provides that the enactment of this Act does not supersede existing administrative regulations of the Director of Consumer Affairs except to the extent that those regulations are inconsistent with the provisions of the Act.*

SOURCE:

Merchants Research Group

SUPPORT:

California Bankers Association

California Retailers Association

Consumers United of California

COMMENT:

1. If a debt collector can escape liability, notwithstanding his bad faith intent, by taking corrective steps within 15 days of being notified of a violation, what incentives are there for a debt collector *not* to risk violating the Act? Since class actions are prohibited, a debt collector, at most, would only have to provide corrective steps to those few debtors who are aware that a violation had occurred.

2. Why should class actions be prohibited?

3. An intentional violation of one of the enumerated debtor's responsibilities may be raised as a defense by a debt collector if the violation is pertinent or relevant to any claim brought against the debt collector. What constitutes the requisite intent for an intentional violation? Clearly, the courts will have no difficulty with the situation where the debtor violated his responsibilities in order to defraud his creditors. However, would the receipt of conspicuous written notice of the responsibility and then the subsequent failure to comply qualify as an intentional violation? To prevent such interpretive problems, perhaps the bill should be amended to permit the defense only where the debtor's violation was for the purpose of defrauding his creditors.

**ENROLLED BILL REPORT**

| AGENCY | BILL NUMBER |
|---|---|
| Agriculture and Services | SB 237 |
| **DEPARTMENT, BOARD OF COMMISSION** | **AUTHOR** |
| **Department of Consumer Affairs** | Robbins |

*SUBJECT:* Debt Collection

*HISTORY, SPONSORSHIP, AND RE-LATED LEGISLATION:*

Existing law gives a creditor the right to urge payment of a just debt and to threaten to resort to proper legal procedures to enforce payment of the debt. The activities may result in an invasion of the debtor's privacy or may cause mental anguish or anxiety; however, a creditor will be held liable only if his action results in the intentional infliction of mental anguish, a severe invasion of the debtor's right to privacy, defamation, or slander.

The collection practices of collection agencies licensed by the Bureau of Collection and Investigative Services are regulated by the Bureau. Licensed collection agencies are responsible for about 10% of the debt collection in California. The other 90% is performed by in-house collectors (for banks, retailers, finance companies, and so on).

In 1977 two bills were introduced which would regulate the debt collection practices of *all* collectors: AB 1078 (Rosenthal) and SB 237. AB 1078, sponsored by the Legal Center for the Elderly (a Legal Aid Society affiliate), was never heard and was finally dropped by its author. SB 237, originally a pro-industry bill, has been substantially amended and now has the support or neutrality of all interested parties. SB 237 would promulgate the Robbins–Rosenthal Fair Debt Collection Practices Act.

*ANALYSIS:*

A. *SPECIFIC FINDINGS*

The Robbins–Rosenthal Fair Debt Collection Practices Act would be a comprehensive act governing the debt collection practices of all persons who in the ordinary course of business on behalf of themselves or others engage in the collection of consumer debts. The Act would thus apply to debt collectors licensed by the Bureau of Collection and Investigative Services (CIS) and to in-house collectors (such as bankers, credit unions, savings and loans, personal property brokers, industrial loan companies, and retailers).

The amendments taken August 4–25, 1977 have removed most of the bill's weaknesses discussed in the Department's analysis of the June 24, 1977 version of the bill.

1) Communication of Information About the Debt or Debtor.

The requirement that certain prohibited acts be intentional to be covered by the bill has been removed. Intent language has been removed from proposed Civil Code Section 1788.11(a), (b), (d) and 1788.12.

The provisions governing employer contact constitute a major improvement in consumer protection. When a debt collector communicates with a debtor's employer about a debt, he may not only violate the debtor's constitutional right to privacy, but he may also jeopardize the debtor's job, which result is clearly in the best interests of neither creditor nor debtor. Our aim in amending the employer-contact provisions of SB 237 was to adopt language that would be vague enough to permit the Bureau to issue implementing regulations that would impose tough restrictions on its licensees, yet specific enough to provide needed restrictions on the unfair practices of in-house collectors. Civil Code Section 1788.12(a) has been amended to permit collectors to contact a debtor's employer only as is necessary to the collection of the debt; necessary communications are defined as those made

for the purposes of verifying the debtor's employment, locating the debtor, or effecting garnishment (after judgment) of the debtor's wages, or in the case of a medical debt, for the purpose of discovering the existence of medical insurance. This limitation in the number of purposes for communication with an employer is intended to limit the number of such contacts, and at the same time, to allow creditors to obtain information reasonably necessary to the collection of the debt.

It is obviously preferable that all communications between collectors and debtors' employers be written, so that the content of such communications can be controlled. The collection industry contends, however, that written inquiries about such crucial matters as confirmation of a debtor's employment often receive untimely, or no, response. The August amendment to Civil Code Section 1788.12 would permit collectors to communicate orally with employers, but only after written communication has received no response within 15 days. The number of communications with a single employer would be limited to the number "necessary to the collection of the debt." The language is intentionally vague on this point to permit the Bureau to limit frequency of contact by regulation and in the case of in-house collectors, to allow the courts to interpret the statute liberally to protect consumers. The amended Section 1788.12(a) would also permit collectors to make a single, initial oral communication to a debtor's employer solely for the purpose of verifying the debtor's employment. This provision, which is a concession to the collection industry, need not significantly weaken the protections afforded in the area of employer contact by regulated collectors since the Bureau can issue regulations specifying the content of such communication.

The amended Section appropriately makes no distinction between employer contact before judgment and contact after judgment; our previous analysis discussed the importance of limiting employer contacts even after judgment, since such judgments are often default judgments, rendered without debtor representation in court. We believe that judgments should be levied on the debtor and that the amended Section would permit the employer contacts necessary to effect such levy.

The amended Section also would require that if a debtor or his attorney consents to prohibited employer contacts, such consent must be in writing. In fact, the August amendments insert the requirement that all consent and disclosure statements be written. See Civil Code Sections 1788.12(a), (b); 1788.21(b); and 1788.22(b).

Civil Code Section 1788.12(a) as amended also contains language from the new CIS regulations prohibiting communications to a debtor's employer from containing language that would be improper if the communication were made to the debtor.

2) Enforcement

The enforcement provisions have been strengthened in three ways.

(A) A prevailing debtor-complainant would be entitled to attorneys fees, while a prevailing collector-defendant would be granted attorneys fees only if the action is adjudged to have been

prosecuted or defended in bad faith (Civil Code Section 1788.30(c)).

(B) Violation of the debtor responsibility provisions of the bill could be raised as a defense by the debtor if such violation is "pertinent or relevant" to the action and if the violation by the debtor was intentional (Civil Code Section 1788.30(g)).

(C) The remedies provided in the bill are to be cumulative rather than exclusive (Civil Code Section 1788.32).

3) The amendment proposed by the collection industry on July 8, 1977 to Business and Professions Code Section 6863 has been amended to permit the Bureau to issue regulations in the subject area of the bill.

This amendment constitutes a major concession from the industry. The Bureau's regulatory authority over the collection practices of its licensees would have been completely abrogated by the July 8, 1977 version of the Section; the newly amended version does *limit* the Board's authority to regulate in the subject area, but other amendments in crucial areas (particularly in Civil Code Section 1788.12(a)) are worded so as to permit the Bureau to issue effective regulations.

It should be noted that the Bureau's licensees are essentially different from in-house collectors and that they require stricter regulation than do in-house collectors. In-house collectors, such an bankers and retailers, are not primarily in the business of collecting debts; other market forces operate on them to some extent to control their collection practices. The bad feelings and bad publicity resulting from the extreme collection practices of retailers and other in-house

collectors can cause them to lose sales. In the case of collection agencies, on the other hand, the market forces operate to the opposite effect. The more effective agencies are in collecting debts, whether through unfair practices such as threats and intimidation or not, the better their reputation among those who use their services and the greater their "sales".

4) Debtor Responsibilities

The bill contains provisions for debtor responsibilities which would be available to a collector as a defense if the debtor's violation can be proved to have been intentional. The August amendments inserted some language from Civil Code Section 1747.20 (the Song–Beverly Credit Card Act) in Section 1788.21(a) and 1788.22(a)(2) to allow consumers a "reasonable time" within which to notify creditors of changes in name, address, or employment, or of a lost credit card. The required notifications need not be written, as the earlier versions of the bill required. We are somewhat concerned about the onerousness of the requirement that a consumer notify his creditors of changes in employment, but we believe that adequate consumer protection would be provided by the requirement that a debtor's violation of the bill's provisions be *intentional* and *pertinent* (Civil Code Section 1788.30(g)) to be available to a creditor as a defense. The August amendments would also require that the debtor responsibilities would apply only if a creditor discloses them "clearly and conspicuously *in writing* ".

B. *FISCAL IMPACT*

The bill would not create additional costs for the Bureau of Collection and

Investigative Services, because their present regulations already cover the area of collection practices.

C. *VOTE*

Senate: 29–0

Assembly: 76–0

D. *RECOMMENDATION:* Sign

The Department of Consumer Affairs worked with Senator Robbins on the August amendments and we are satisfied that the amended bill would constitute a significant improvement in consumer protection against unfair debt collection practices. While the bill's provisions are in some cases less strict than the new regulations governing the collection agencies licensed by the Bureau of Collection and Investigative Services, we believe that the bill's impact on the presently unregulated collection practices of in-house collectors—whose activities make up more than 90% of debt collection—would represent a positive gain for consumers.

**ENROLLED BILL REPORT**

Form DF–44 (Rev. 5/75 4M)

| AGENCY | AUTHOR | BILL WC. |
|---|---|---|
| DEPARTMENT OF FINANCE | Robbins | SB 237 |

| SUBJECT: | DATE LAST AMENDED |
|---|---|
| | August 26, 1977 |

This bill would establish a comprehensive act regulating debt collection practices in the State.

HISTORY, SPONSORSHIP, AND RELATED BILLS

This bill is supported by the Department of Consumer Affairs.

ANALYSIS

A.  Specific Findings

Under existing law, licensed collection agencies are prohibited from engaging in unfair, misleading, or illegal debt collection practices (Section 6947 of the Business and Professions Code).

This bill would substantially expand the coverage of debt collection law. Under existing law, only the debt collection practices of *licensed* collection agencies are regulated. This bill would increase the coverage of such law so as to include in-house debt collectors such as banks and retailers (approximately 90 percent of the debt collectors for the State). Further, this bill would clarify and expand the scope of regulated debt collection activities. Structurally, the bill establishes specified debt collector and creditor responsibilities. Violations of these responsibilities trigger various enforcement provisions. The responsibilities and enforcement provisions will be discussed below separately.

*Debt Collector Responsibilities*

This bill prohibits debt collectors from collecting or attempting to collect a debt by threatening: (a) to use physical force; (b) to cause the debtor of committing a

crime; (c) to defame the debtor; (d) to assign the debt so as to remove any debtor defenses; and (e) to arrest the debtor or to seize, garnish, or otherwise attach property unless such action is permitted by law.

## SUMMARY OF REASONS FOR SIGNATURE/VETO

Would be a significant improvement in consumer protection against unfair debt collection practices.

Further, the debt collector is prohibited from engaging in certain practices including: (a) using profane or obscene language; (b) causing harassment of the debtor through the use of the telephone or other forms of communication; (c) nondisclosing the identity of the collecting party, and (d) misrepresenting the authority of the debt collector or consequences of nonpayment or affirmance of the debt.

Additionally, this bill limits debt collector contacts with the debtor's employer or family. Specifically, the debt collector is prohibited from contacting the debtor's employer unless such communication is "necessary for the collection of the debt" (i.e., verifying debtor's employment, locating the debtor, or affecting after judgment wage garnishment). Family contact is prohibited unless the debtor is a minor or living with his parents.

This bill also prohibits the publication or communication of "deadbeat" lists.

### Debtor Responsibilities

This bill prohibits any applicant for credit to request credit when such person knows that there is no reasonable probability that the debt will be paid or actually intend not to pay the debt. Further, an applicant is prohibited from knowingly submitting false information or concealing adverse information.

Also, this bill requires a debtor to notify a creditor, within a reasonable amount of time, of any change in name, address, employment or loss or unauthorized use of a credit card or account.

### Enforcement

This bill creates an individual cause of action for the debtor for any violation by a debt collector of the provisions of this bill. The debtor may obtain actual damages and punitive damages which cannot exceed $1,000.

The debt collector may escape liability if such person takes corrective action within 15 days of the notice of a violation or approves by a "preponderance of the evidence" that such a violation was unintentional.

In any action pursuant to this bill, the debt collector must ensure that service of process is legally effected and that the proceeding is brought in the county where the debt was incurred or where the debtor resided at the time of the action or when the debt was incurred. Reasonable attorney fees may be obtained by the prevailing debtor or the prevailing creditor if such person can prove that the action or defense by the debtor was brought in "bad faith."

B. Fiscal Effect

This bill will not result in significant costs to the State. For the most part, the provisions of this bill will be enforced through private litigation.

The Department of Consumer Affairs estimates that this bill will result in only

*minor* costs to the Department. Some costs will be incurred in revising and adding to existing regulations in relation to licensed debt collectors. Additionally, this bill, as under existing law, requires that copies of those provisions of law and regulations affecting licensed debt collectors be supplied to each licensee. Both costs can be absorbed by the Department's existing resources.

There may be additional disciplinary action costs (hearing and notification costs) incurred by the Department as the result of the expansion of grounds for which discipline may be imposed. These costs are indeterminable at this time but will be reviewed during the normal budgetary process.

| | 1977–78 | 1978–79 | Fund |
|---|---|---|---|
| Department of Consumer Affairs | Minor | Minor | General |

(3609A)

AB 969 Assembly Bill—Bill Analysis

SENATE RULES COMMITTEE                                             AB 969
Office of Senate Floor Analyses
1020 N Street, Suite 524
(916) 445–6614 Fax: (916)
327–4478

THIRD READING

Bill No: AB 969

Author: Papan (D)

Amended: 7/15/99 in Senate

Vote: 21

*SENATE JUDICIARY COMMITTEE:* 7–1, 7/7/99

AYES: Escutia, Morrow, O'Connell, Peace, Sher, Wright, Schiff

NOES: Haynes

NOT VOTING: Burton

*ASSEMBLY FLOOR:* 63–16, 5/27/99— See last page for vote

*SUBJECT:* Debt collectors

*SOURCE:* Attorney General

*DIGEST:* This bill incorporates by reference selected provisions from the Federal Debt Collection Practices Act (FDCPA). Specifically, this bill:

1. Adopts the provisions of the Federal Debt Collection Practices Act relating to: acquisition of location information; communication in connection with debt collection; harassment or abuse; false or misleading representations; unfair practices; validation of debts; multiple debts; legal actions by debt

collectors; and furnishing certain deceptive forms.

2. Excludes any officer or employee from the requirements relating to initial disclosures and validation of debts, while that person is acting as a debt collector for another person, if both persons are related by common ownership or affiliated by corporate control (in other words, those companies collecting their own debts).

3. Specifies that remedies for violation of the fair debt collection procedures include: actual damages and up to a $1,000 penalty for individual violations, and actual damages and up to $500,000 or one percent of net worth penalty together with costs of suit and attorney's fees to the prevailing plaintiff(s) for class actions.

4. Renames Robbins–Rosenthal Fair Debt Collection Practices Act as the Rosenthal Fair Debt Collection Practices Act.

*ANALYSIS:* Existing law prohibits unfair debt collection activities including making of threats, using obscene language and making misrepresentations in the attempt to collect debts, or information about debtors. It allows limited contact with third persons, such as employers and family members.

This bill provides that every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of Title 15 of the United States Code. These sections provide, among other provisions, that a collector may not harass, oppress, or abuse a debtor, nor use obscene language. Third parties may only be contacted with the debtor's permission.

Existing law provides penalties for violation which include actual damages, and penalties of no less than one hundred dollars ($100) nor no greater than one thousand dollars ($1,000). Attorneys' fees are also available to prevailing debtors, and to prevailing creditors if the court finds the debtor's action to be brought in bad faith. California law does not provide for class actions.

Existing law allows a debt collector in violation to escape liability if:

1. A debt collector within 15 days either after discovering a violation which is able to be cured, or after the receipt of a written notice of such violation, the debt collector notifies the debtor of the violation, and makes whatever adjustments or corrections are necessary to cure the violation with respect to the debtor, or;

2. If the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation.

This bill provides that violators shall be subject to the remedies in Section 1692k of Title 15 of the United States Code, which contains the following remedies for violation:

1. Actual damages and up to a $1,000 penalty for an individual violation;

2. All actual damages and an amount not to exceed the lesser of up to $500,000 or one percent of net worth penalty together with costs of suit and attorney's fees to the prevailing plaintiff(s) for class actions.

This bill allows a defense for collectors acting with a good faith belief that their

action is in conformity with FTC regulations.

This bill excludes any officer or employee from the requirements relating to initial disclosures and validation of debts, while acting as a debt collector for another person, if both are related by common ownership or affiliated by corporate control (in other words, a company collecting its own debt) as specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title 15 of the United States Code subsection (11) of Section 1692e and Section 1692g.

This bill specifies that the references to federal bodies in this bill refer to those codes as they read on January 1, 2000.

### Background

Debt collection practices in California are governed by both federal and state law. The Federal Debt Collection Practices Act, and state Robbins–Rosenthal Fair Debt Collection Practices Act were both enacted in 1977. According to The Fair Debt Collection Practices Acts, (Cont. Ed. Bar 1999), "Congress enacted the federal FDCPA on findings of abundant abusive, deceptive, and unfair collection practices; abusive debt collection practices that contributed to bankruptcies, family instability, job loss, invasion of privacy; inadequacy of existing law to protect consumers or to provide redress for these injuries; and the need to regulate the collection of consumer debts and provide uniform laws against unethical debt collection practices. California's Legislature responded similarly by enacting the Robbins–Rosenthal Fair Debt Collection Practices Act." Id.

### Problems with existing law

The area of current law which is of most concern to the proponents of this legislation is the ability for violators to escape liability if they cure the impact of their illegal practice. Supporters argue that there is no deterrent in the existing law, and that debt collectors can flaunt the law with no threat of accountability. If any practice is complained of, all a company must do is stop calling, writing, harassing that person, and they are safe from punishment. In addition, the law limits damages to actual harm, which often means no monetary loss, as the harm to the consumer is the distress and hardship caused by the incessant presence of the debt collector. In the event a group of persons is affected, the culprit can still escape liability for all harm caused to consumers, unless each and every consumer brings a complaint. This is highly unlikely, a fact those engaged in improper debt collection practices can bank on.

Another issue of concern for proponents is the interplay of federal and state law. The federal Fair Debt Collection Practices Act only preempts state law to the extent of any inconsistency. A state law is not inconsistent if the protection such law affords any consumer is greater than the protection provided by the federal act. However, the FTC must exempt by regulation any class of collection practices regulated by a state law that is substantially similar if there is adequate enforcement under state law. This would, theoretically, allow state law to prevail, even if a more strict federal law were in place.

This duel scheme of regulation can sometimes become confusing, rendering state law unused. The sponsor argues this bill is needed in order to establish clear lines

of acceptable behavior, pointing out that other states, such a Pennsylvania and Massachusetts, have similarly incorporated federal provisions to harmonize state and federal law. The AG adds that, "consistent federal and state standards would facilitate compliance and enforcement and provide a level playing field for all engaged in debt collection activity."

*Federal law references translated*

This bill incorporates by reference certain provisions of federal law. Perhaps a translation would be helpful. The bill provides that every consumer debt collector shall comply with the provisions of Sections 1692b to 1692j of Title 15 USC. The following is a synopsis of those provisions:

Section 1692b is the section dealing with how one may communicate with third persons in trying to locate a debtor. It generally prohibits collectors from identifying themselves as collectors to friends, family, etc, unless asked.

Section 1692c deals with how the collector may communicate with the debtor, e.g., no late night calls, no direct communication with a person represented by council, cessation of calls once the consumer notifies the collector in writing of their intention not to pay the debt.

Section 1692d prohibits harassment and abuse.

Section 1692e prohibits false or misleading representations.

Section 1692f proscribes unfair practices, such as charging excessive interest, accepting checks postdated beyond five days, causing the debtor to incur costs associated with collection activities such as telegram fees and threatening judicial action without intent to actually go to court.

Section 1692g requires that the debtor be given the true amount of the debt, the name of the creditor to whom the debt is owed, and explanation that the debtor may contest the debt.

Section 1692h provides for distribution of payment among accounts when a person has multiple debts for which the collector is receiving payment.

Section 1692i provides for venue for any legal action to be the place where the contract giving rise to the debt was signed, or where the real property is located, for contests related to the property.

Section 1692j prohibits the use of deceptive forms which shield the identity and nature of the debt collectors communication with the debtor.

*FISCAL EFFECT*: Appropriation: No Fiscal Com.: No

Local: No

*SUPPORT*: (Verified 7/15/99)

Office of the Attorney General (source)

Consumers Union

*ARGUMENTS IN SUPPORT*: According to the author, "Because of our current law, violations of the Fair Debt Collection Practices Act are honored more in the breach than the observance and there is no meaningful incentives for debt collectors to comply. In addition, as demonstrated by a recent pattern of conduct by a major national retailer in fraudulently inducing debtors to validate debts after bankruptcy, absent the threat of a class action, there is no incentive to abort an illegal continuing course of conduct."

Supporters state the bill is needed to address a growing problem. "Complaints about unfair and unlawful debt collection practices are one of the most frequent

consumer problems according to the Federal Trade Commission," claims Consumers Union. "These practices include verbal harassment, telephoning consumers repeatedly within a short period of time, calling consumers at work, and contacting employers, family and neighbors about a consumer's alleged debts. Other problems involve misrepresentations, such as threats to commence civil or criminal proceedings, to garnish wages or repossess homes immediately, or to have consumers arrested or jailed, when no such intent or rights exists."

The bill's sponsor, the Attorney General, adds, "the Attorney General's office has sponsored AB 969 to harmonize state and federal law by applying federal debt collection standards and remedies to all parties defined as debt collectors under California law."

*ASSEMBLY FLOOR:*

AYES: Alquist, Aroner, Ashburn, Baugh, Bock, Calderon, Campbell, Cardenas, Cardoza, Cedillo, Corbett, Correa, Cox, Cunneen, Davis, Dickerson, Ducheny, Dutra, Firebaugh, Florez, Floyd, Frusetta, Gallegos, Granlund, Havice, Hertzberg, Honda, Jackson, Keeley, Knox, Kuehl, Leach, Lempert, Leonard, Longville, Lowenthal, Machado, Maldonado, Mazzoni, Migden, Nakano, Olberg, Oller, Robert Pacheco, Papan, Pescetti, Reyes, Romero, Scott, Shelley, Soto, Steinberg, Thompson, Thomson, Torlakson, Vincent, Washington, Wayne, Wesson, Wiggins, Wildman, Wright, Villaraigosa

NOES: Aanestad, Ackerman, Baldwin, Bates, Battin, Brewer, Briggs, House, Kaloogian, Maddox, Margett, McClintock, Rod Pacheco, Runner, Strickland, Zettel

NOT VOTING: Strom–Martin

RJG:kb 7/23/99 Senate Floor Analyses

SUPPORT/OPPOSITION: SEE ABOVE

AB 969
Assembly Member Papan
As Amended May 18, 1999
Hearing Date: July 7, 1999
Civil Code
DLM:cjt

A
B

9
6
9

*SUBJECT*

Debt Collectors

*DESCRIPTION*

This bill would incorporate by reference selected provisions from the Federal Debt Collection Practices Act (FDCPA). Specifically, this bill would:

Adopt the provisions of the Federal Debt Collection Practices Act relating to: acquisition of location information; communication in connection with debt collection; harassment or abuse; false or misleading representations; unfair practices; validation of debts; multiple debts; legal actions by debt collectors; and furnishing certain deceptive forms.

Exclude any officer or employee from the requirements relating to initial disclo-

sures and validation of debts, while that person is acting as a debt collector for another person, if both persons are related by common ownership or affiliated by corporate control. (In other words those companies collecting their own debts.)

Specify that remedies for violation of the fair debt collection procedures include: actual damages and up to a $1,000 penalty for individual violations, and; actual damages and up to $500,000 or 1 percent of net worth penalty together with costs of suit and attorney's fees to the prevailing plaintiff(s) for class actions.

### BACKGROUND

Debt collection practices in California are governed by both federal and state law. The Federal Debt Collection Practices Act, and state Robbins–Rosenthal Fair Debt Collection Practices Act were both enacted in 1977. According to The Fair Debt Collection Practices Acts, (Cont. Ed. Bar 1999), "Congress enacted the federal FDCPA on findings of abundant abusive, deceptive, and unfair collection practices; abusive debt collection practices that contributed to bankruptcies, family instability, job loss, invasion of privacy; inadequacy of existing law to protect consumers or to provide redress for these injuries; and the need to regulate the collection of consumer debts and provide uniform laws against unethical debt collection practices. California's Legislature responded similarly by enacting the Robbins–Rosenthal Fair Debt Collection Practices Act." Id.

### CHANGES TO EXISTING LAW

1. *Existing law* prohibits unfair debt collection activities including making of threats, using obscene language and making misrepresentations in the attempt to collect debts, or information about debtors. It allows limited contact with third persons, such as employers and family members.

*This bill* would provide that every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of Title 15 of the United States Code. These sections provide, among other provisions, that a collector may not harass, oppress, or abuse a debtor, nor use obscene language. Third parties may only be contacted with the debtor's permission.

2. *Existing law* provides penalties for violation which include actual damages, and penalties of no less than one hundred dollars ($100) nor no greater than one thousand dollars ($1,000). Attorneys fees are also available to prevailing debtors, and to prevailing creditors if the court finds the debtor's action to be brought in bad faith. California law does not provide for class actions.

*Existing law* allows a debt collector in violation to escape liability if:

A debt collector within 15 days either after discovering a violation which is able to be cured, or after the receipt of a written notice of such violation, the debt collector notifies the debtor of the violation, and makes whatever adjustments or corrections are necessary to cure the violation with respect to the debtor, or;

If the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation.

*This bill* would provide that violators shall be subject to the remedies in Section 1692k of Title 15 of the United States Code, which contains the following remedies for violation:

Actual damages and up to a $1,000 penalty for an individual violation;

All actual damages and an amount not to exceed the lesser of up to $500,000 or 1 percent of net worth penalty together with costs of suit and attorney's fees to the prevailing plaintiff(s) for class actions.

*This bill* would allow a defense for collectors acting with a good faith belief that their action is in conformity with FTC regulations.

*This bill* would exclude any officer or employee from the requirements relating to initial disclosures and validation of debts, while acting as a debt collector for another person, if both are related by common ownership or affiliated by corporate control, (in other words a company collecting its own debt) as specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title 15 of the United States Code subsection (11) of Section 1692e and Section 1692g.

## COMMENT

1. *Stated need for legislation and support*

According to the author, "Because of our current law, violations of the Fair Debt Collection Practices Act are honored more in the breach than the observance and there is no meaningful incentives for debt collectors to comply. In addition, as demonstrated by a recent pattern of conduct by a major national retailer in fraudulently inducing debtors to validate debts after bankruptcy, absent the threat of a class action, there is no incentive to abort an illegal continuing course of conduct."

Supporters state that the bill is needed to address a growing problem. "Complaints about unfair and unlawful debt collection practices are one of the most frequent consumer problems according to the Federal Trade Commission," claims Consumers Union. "These practices include verbal harassment, telephoning consumers repeatedly within a short period of time, calling consumers at work, and contacting employers, family and neighbors about a consumer's alleged debts. Other problems involve misrepresentations, such as threats to commence civil or criminal proceedings, to garnish wages or repossess homes immediately, or to have consumers arrested or jailed, when no such intent or rights exists."

The bill's sponsor, the Attorney General, (AG) adds, "the Attorney General's office has sponsored AB 969 to harmonize state and federal law by applying federal debt collection standards and remedies to all parties defined as debt collectors under California law."

2. *Problems with existing state law*

The area of current law, which is of most concern to the proponents of this legislation, is the ability for violators to escape liability if they cure the impact of their illegal practice. Supporters argue that there is no deterrent in the existing law, and that debt collectors can flaunt the law with no threat of accountability. If any practice is complained of, all a company must do is stop calling, writing, harassing that person, and they are safe

from punishment. In addition, the law limits damages to actual harm, which often means no monetary loss, as the harm to the consumer is the distress and hardship caused by the incessant presence of the debt collector. In the event a group of persons is affected, the culprit can still escape liability for all harm caused to consumers, unless each and every consumer brings a complaint. This is highly unlikely, a fact those engaged in improper debt collection practices can bank on.

Another issue of concern for proponents is the interplay of federal and state law. The federal Fair Debt Collection Practices Act only preempts state law to the extent of any inconsistency. A state law is not inconsistent if the protection such law affords any consumer is greater than the protection provided by the federal Act. However, the FTC must exempt by regulation any class of collection practices regulated by a state law that is substantially similar if there is adequate enforcement under state law. This would, theoretically, allow state law to prevail, even if a more strict federal law were in place.

This duel scheme of regulation can sometime become confusing, rendering state law unused. The sponsor argues that this bill is needed in order to establish clear lines of acceptable behavior, pointing out that other states, such a Pennsylvania and Massachusetts have similarly incorporated federal provisions to harmonize state and federal law. The AG adds that, "consistent federal and state standards would facilitate compliance and enforcement and provide a level playing field for all engaged in debt collection activity."

### 3. *Federal law references translated*

This bill would incorporate by reference certain provisions of federal law. Perhaps a translation would be helpful. The bill provides that every consumer debt collector shall comply with the provisions of Sections 1692b to 1692j of Title 15 USC. The following is a synopsis of those provisions:

Section 1692b is the section dealing with how one may communicate with third persons in trying to locate a debtor. It generally prohibits collectors from identifying themselves as collectors to friends, family, etc?unless asked.

Section 1692c deals with how the collector may communicate with the debtor, e.g. no late night calls, no direct communication with a person represented by council, cessation of calls once the consumer notifies the collector in writing of their intention not to pay the debt.

Section 1692d prohibits harassment and abuse.

Section 1692e prohibits false or misleading representations.

Section 1692f proscribes unfair practices, such as charging excessive interest, accepting checks postdated beyond five days, causing the debtor to incur costs associated with collection activities such as telegram fees and threatening judicial action without intent to actually go to court.

Section 1692g requires that the debtor be given the true amount of the debt, the name of the creditor to whom the debt is owed, and explanation that the debtor may contest the debt.

Section 1692h provides for distribution of payment among accounts when a per-

son has multiple debts for which the collector is receiving payment.

Section 1692i provides for venue for any legal action to be the place where the contract giving rise to the debt was signed, or where the real property is located, for contests related to the property.

Section 1692j prohibits the use of deceptive forms which shield the identity and nature of the debt collectors communication with the debtor.

4. *Suggested technical amendment*

The bill references and incorporates sections of the federal code, without giving reference to an applicable point in time. This may cause a conflict if the federal law is amended. The question may arise as to what the intention of the Legislature is: to establish a set time for reference; to alter the California codes whenever federal codes are amended; and would that be a delegation of our legislative authority to amend our statutes? While the author intends to incorporate federal judicial interpretations of the federal provisions referenced in the bill, he states that it is not his desire to delegate to the federal government the ability to amend California statutes by legislative fiat. In that case, the bill should be amended to reference the federal codes as of a date certain.

> SHOULD THE BILL BE AMENDED TO CLARIFY THAT REFERENCES TO THE FEDERAL CODES REFER TO THOSE PROVISIONS AS THEY READ JANUARY 1, 2000?

Support: Consumers Union

Opposition: None Known

### HISTORY

Source: Office of the Attorney General

Related Pending Legislation: None Known

Prior Legislation: None Known

Prior Vote: Assembly Banking & Finance Committee 11–0; Assembly Floor 63–16